UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRAVONE WILSON,

       Petitioner,               Case No. 2:20-cv-12688
                                     Hon. George Caram Steeh

  v.

GEORGE STEPHENSON,[1]

       Respondent.

_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

     Travone Wilson, a Michigan prisoner, filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254. Wilson is serving a lengthy prison sentence for his Wayne Circuit Court jury trial conviction of second-degree murder and commission of a felony with a firearm. MICH. COMP. LAWS §§ 750.317 and 227b. The petition raises four claims: (1) constitutionally insufficient evidence was presented at trial, (2) the jury's verdict was against the great weight of the evidence, (3) the prosecutor committed misconduct by offering false testimony, and (4) trial counsel was ineffective

_____

[1] The Court substitutes George Stephenson, the current Warden of Wilson's facility, as the proper Respondent. *See Edwards v. Johns*, 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006).

for failing to obtain transcripts. The Court will deny the petition because the claims are without merit.

## I. Background

Wilson's convictions stem from the shooting death of Ernest Tye at his Detroit flat. Wilson was charged along with his brother, Lawrence Stafford and another man, Willie Simms. Simms was tried first and convicted of second-degree murder. Wilson and Stafford were then tried jointly. The Michigan Court of Appeals summarized the facts adduced at their joint trial as follows:

> Defendants' convictions resulted from their participation in the fatal shooting of Ernest Tye in Tye's home. The defendants are brothers even though they have different last names. The principal issue at trial was defendants' identity as participants in the crime. The prosecutor presented evidence that defendant Stafford, defendant [Travone] Wilson, and a person named Willie Simms were seen outside the duplex where Tye lived in an upstairs unit, and they gained entrance after defendant Stafford kicked in the door. Defendants Stafford and Wilson entered the duplex, while Simms stayed behind, acting as a lookout. Henric Hayes, who lived in the downstairs unit of the duplex, heard concerning noises originating from the stairwell, opened his door, and saw Simms holding a gun and wearing plastic gloves. Hayes quickly slammed his door and, soon after, heard several gunshots originating from Tye's unit. Charles Deen, a neighbor who had observed the three men gain entry into the duplex, heard several gunshots and then saw defendant Stafford, defendant Wilson, and Simms flee from the duplex. Around the same time, another witness, Mark Eddins, saw defendant Stafford, defendant Wilson, and Simms fleeing from the area of the duplex, running toward a vacant house that the three men

frequented. Defendants Stafford and Wilson both denied any involvement in the offense.

*People v. Wilson*, No. 339133, 2018 WL 4577192, at *1 (Mich. Ct. App. Sept. 18, 2018).

Based on this evidence, the jury acquitted Wilson and Stafford of first-degree murder but found them guilty of second-degree murder and felony-firearm. Following sentencing, Wilson filed a claim of appeal. His appellate counsel filed a brief on appeal that raised the following four claims:

> I. All of the evidence presented at trial regarding the murder demonstrated an execution style murder. None of the evidence supported a rational inference that Mr. Wilson specifically aided the commission of felony-firearm. The evidence insufficient to support the convictions.
>
> II. The testimony so inconsistent and untrustworthy that the verdict was against the great weight of the evidence. The trial court abuse its discretion by denying Mr. Wilson's motion for dismissal or a new trial.
>
> III. The prosecutor commit prosecutorial misconduct when he failed to correct Mr. Deen's substantially misleading, if not false, testimony.
>
> IV. Trial counsel provide ineffective representation by failing to obtain the transcripts form the Simms's case.

The Michigan Court of Appeals affirmed in an unpublished opinion.

*Wilson*, 2018 WL 4577192. Wilson then filed an application for leave to appeal in the Michigan Supreme Court, but it was denied by standard form order. *People v. Wilson,* 931 N.W.2d 343 (Mich. 2019) (Table).

Wilson's habeas petition raises the same four claims he presented to the state courts in his direct appeal.

## II. Standard of Review

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably

applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*,

539 U.S. 510, 520 (2003) quoting *Williams*, 529 U.S. at 413.

## III. Discussion

A. Sufficiency of the Evidence

Wilson first claims that constitutionally insufficient evidence was

presented at trial to prove that he committed second-degree murder when

all the evidence presented by the prosecution tended to indicate an

execution style crime that constituted first-degree murder. Essentially, he

argues that no rational view of the evidence could have led the jury to

convict him of only second-degree murder. Wilson further argues that

insufficient evidence was presented to support his felony-firearm

conviction.

After reciting the controlling constitutional standard, the Michigan

Court of Appeals rejected this claim on the merits:

> Two witnesses, Deen and Eddins, unequivocally identified
> defendant Wilson as a person involved in the offense. The
> evidence disclosed that, earlier in the day, defendant Wilson's
> brother, defendant Stafford, had been looking for Tye. Later,
> Deen observed defendant Wilson with defendant Stafford and
> Simms on Tye's porch, and saw defendant Wilson enter the
> duplex with defendant Stafford after the latter kicked in the door.
> Hayes heard loud noises originating from the stairwell that led to
> Tye's upstairs unit, opened his door, and saw Simms standing in
> the vestibule, alone, and holding a firearm; Hayes did not see
> defendants Wilson or Stafford, but soon thereafter heard
> gunshots originating from Tye's upstairs unit. Deen testified that

after defendants Wilson and Stafford entered the duplex, he heard several gunshots. Immediately after the gunshots rang out, Deen and Eddins saw defendant Wilson and the two others flee from the duplex.

From this evidence, a jury could reasonably infer that defendant Wilson acted in concert with defendant Stafford and Simms in committing Tye's murder. Although there was testimony that could have supported an inference of premeditation and deliberation, it was within the purview of the jury to find that the defendants caused Tye's death with malice, but did not do so with a premeditated and deliberate intent to kill him. Thus, while defendant Wilson suggests alternative ways of viewing the evidence, it was up to the trier of fact to evaluate the evidence. For purposes of resolving this sufficiency challenge, we are required to view the evidence in a light most favorable to the prosecution. *Reese*, 491 Mich. at 139. Viewed in this manner, the evidence was sufficient to sustain defendant Wilson's conviction of second-degree murder.

\*\*\*

Viewed in the light most favorable to the prosecution, defendant Wilson's actions demonstrated an intent to aid or abet the possession of a firearm during the commission of Tye's murder. The same evidence that supports defendant Wilson's conviction of second-degree murder under an aiding and abetting theory also supports his felony-firearm conviction. From the evidence that the three men were on the front porch of Tye's duplex when defendant Stafford kicked in the door, but only Simms remained outside to act as lookout, the jury could infer that defendant Wilson and defendant Stafford both entered Tye's unit. The evidence that Tye was shot multiple times inside his unit means that either defendant Wilson or defendant Stafford was armed with a gun. After the shooting, defendant Wilson fled the scene with defendant Stafford and Simms. A jury could infer from this evidence that defendant Wilson, if not armed and using a firearm himself, knew that defendant Stafford intended to use a firearm to carry out the crime. Thus, defendant Wilson assisted the others in the possession of a firearm. Accordingly, sufficient

> evidence supports defendant Wilson's conviction for felony-firearm as either a principal or under an aiding-and-abetting theory.

*Wilson*, 2018 WL 4577192, at *5-6.

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court announced the following standard for resolving sufficiency claims: the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319. The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Witness credibility remains the province of the jury, *see Herrera v. Collins*, 506 U.S. 390, 401-02 (1993), and an attack on witness credibility constitutes a challenge to the quality, but not the sufficiency of the government's evidence. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). The habeas court need only examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by Jackson; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011) (en banc) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Court first notes that Wilson's argument finds no support in the established standard. Wilson argues that if the jury accepted the prosecutor's proofs, then it would have convicted him of first-degree murder – that there simply was no basis given the evidence presented at trial to find him guilty of murder without also finding that the crime was committed with premeditation and deliberation. He asserts that finding him not guilty of first-degree murder but guilty of second-degree murder was inconsistent with the evidence presented. Clearly established Supreme Court law, however, holds that "inconsistent verdicts are constitutionally tolerable." *Dowling v. United States*, 493 U.S. 342, 353-54 (1990). "Inconsistency in a

verdict is not a sufficient reason for setting it aside." *Harris v. Rivera*, 454 U.S. 339, 345 (1981). The fact that an inconsistent verdict might be the result of lenity on the part of the factfinder "suggests that inconsistent verdicts should not be reviewable." *United States v. Powell*, 469 U.S. 57, 65 (1984).

Here, the state court reasonably found that constitutionally sufficient evidence supported Wilson's conviction. Under the *Jackson* standard, the state court correctly assumed that the prosecution witnesses' testimony was accepted as true by the jury. Eddins prior testimony, which was admitted because he was unavailable at the time of Wilson's trial, indicated that he recognized Wilson, Simms, and Stafford hanging out together on the front porch of the home next to the victim's residence prior to the crime. (ECF No. 8-9, at 173.) Deen testified that shortly before the shooting, he saw these same three men come from between two houses and walk to the victim's residence. He saw the victim open the door, all three men went inside, and then Deen heard several gunshots. (ECF No. 8-8, at 136-144.) Deen walked across the street and saw all three men run out of the house. (Id., at 145.) Meanwhile, Hayes testified that he was inside the residence, and when he opened the door to his flat he saw Willie Simms holding a gun and wearing clear plastic gloves. (ECF No. 8-9, at 110.) Hayes ducked

back inside and then heard noises from above his apartment. After hearing the shots, Deen saw all three men run out of the victim's house and run through an alley. (ECF No. 8-8, at 146.) Eddins also identified Wilson as being one of the men he saw running from the house after the shooting. (ECF No. 8-9, at 172.) Police later discovered the body of the victim in his apartment.

The testimony of these three eyewitnesses taken together provided constitutionally sufficient evidence to establish beyond a reasonable doubt that Wilson was one of the men who participated in the murder of the victim. It created a strong circumstantial case that the three men, acting in concert, entered the victim's flat and shot him to death. The use of the firearm, the positioning of a look-out, the number of shots fired, and the position of the body all supported a finding that the three acted with the malice required for second-degree murder. While the evidence also certainly would have allowed for an inference of premeditation sufficient for a first-degree murder verdict, the jury's decision to not make that finding does not negate the sufficiency of the evidence as to second-degree murder.

As the state court also reasonably found, the same evidence that supported the second-degree murder conviction supported the firearm

conviction. The evidence suggested that Simms was openly carrying one firearm when he entered the residence. The circumstances of the crime supported a finding that Wilson either personally used another firearm to commit the murder or that he aided Stafford in committing the murder with knowledge that he possessed another firearm. Sufficient evidence was presented to support Wilson's conviction for felony-firearm.

Because the state court reasonably rejected the claim, Wilson fails to demonstrate entitlement to habeas relief with respect to his first claim.

B. Great Weight of the Evidence

Wilson next claims that was entitled to a new trial under Michigan Court Rule 2.611(A)(1)(e) because the jury's verdict was opposed by the "great weight of the evidence." Unlike Wilson's first claim, this claim does not challenge the constitutional sufficiency of the evidence. Rather, it is based on state-law principles, and as such, the claim does not present a cognizable issue on federal habeas review.

It is well-established that habeas review is not available to correct errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). "A federal habeas court . . . has no power to grant habeas relief on a claim that a state conviction is against the

great weight of the evidence." *Cukaj v. Warren*, 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004); *see also Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (6th Cir. 2007) (noting that "a manifest-weight-of-the-evidence argument is a state-law argument"). A claim that a verdict went against the great weight of the evidence "is not of constitutional dimension for habeas corpus purposes unless the record is so devoid of evidentiary support that a due process issue is raised." *Cukaj*, 305 F. Supp. 2d at 796. "The test for habeas relief is not whether the verdict was against the great weight of the evidence, but whether there was any evidence to support it." *Dell v. Straub*, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002). If "there was sufficient evidence to convict petitioner of these crimes, the fact that the verdict may have gone against the great weight of the evidence would not entitle him to habeas relief." *Id*. Wilson's second claim therefore does not state a basis for granting habeas relief.

C. Prosecutorial Misconduct

Wilson's third claim asserts that the prosecutor committed misconduct by failing to correct false testimony. He asserts that prosecution witnesses Eddins and Deen made inconsistent statements between their statements to police, their preliminary examination testimony, and their trial

testimony. It follows, Wilson, argues, that the prosecutor must have known that some of their testimony was false but offered it anyway.

The Michigan Court of Appeals addressed an identical claim raised by Stafford and rejected on the same basis:

> In his last issue, defendant Stafford cites instances when Deen's and Eddins's testimony differed from their prior testimony and other witnesses' trial testimony or police statements. He argues that these inconsistencies demonstrate that the prosecutor knowingly presented perjured testimony. As defendant Stafford correctly observes, a prosecutor may not knowingly use false testimony to obtain a conviction. *People v. Smith*, 498 Mich. 466, 475-476; 870 N.W.2d 299 (2015).

> The inconsistencies listed by defendant Stafford do not establish that the prosecutor knowingly used perjured testimony to obtain his convictions. Although there were instances when both witnesses' trial testimony differed from their prior testimony, there is no indication that the prosecutor sought to conceal those inconsistencies. Indeed, defendant Stafford cites examples of when either one of the defense attorneys or the prosecutor questioned the witnesses about their inconsistent statements.

> For example, Deen initially testified that he saw someone reach through the mail slot to open the screen door of the duplex, but later clarified that he "didn't see that." He testified that Hayes opened a door, but upon further questioning, clarified that he did not see Hayes open the security door, but saw defendant Stafford kick it open. Deen was also questioned about inconsistencies in his testimony related to where he was positioned on the porch during his observations, whether porch lights were on, and whether he had consumed alcohol on the day of the murder. Defendant Stafford emphasizes that according to Deen's police statement, Deen identified the person he saw at the duplex as "Al." At trial, however, Deen testified that he was not stating "AL," but "L," which is defendant Stafford's nickname. And as previously indicted, the jury was made aware that Deen

first talked to the police after Tye's sister bought him a beer and drove him to the police station. Regarding Eddins, he was also questioned, for example, about his unclear testimony concerning the presence of street lights and how often he saw the three defendants each week.

In closing argument, the prosecutor acknowledged that there were some inconsistencies in the witnesses' testimony, stating: "People see, hear, and remember things differently. Does that explain why there's a difference in testimony? If you decide a witness lied about something important, you can just believe everything they say, you can believe some of what they say, or pick the good parts and separate out the bad parts." Testimony that conflicts with prior testimony or other witnesses' testimony does not lead to the conclusion that the prosecutor knowingly used perjured testimony. Defendant Stafford's argument does not involve an issue of perjury, but of witness credibility. Both defense attorneys explored the credibility problems with Deen's and Eddins's testimony, as well as other prosecution witnesses. The jury was free to believe or disbelieve all or any portion of the witnesses' trial testimony. *Unger*, 278 Mich. App. at 222.

*Wilson*, 2018 WL 4577192, at *3-4.

The controlling Supreme Court decision governing prosecutorial misconduct claims is *Darden v. Wainwright*, 477 U.S. 168 (1986). Under *Darden*, a prosecutor's improper comments violate a criminal defendant's constitutional rights if they "'so infect[] the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id*., at 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). To constitute a due process violation, the prosecutor's conduct must have been "so egregious

so as to render the entire trial fundamentally unfair." *Byrd v. Collins*, 209

F.3d 486, 529 (6th Cir. 2000) (citations omitted).

With respect to the presentation of false testimony, the "deliberate

deception of a court and jurors by the presentation of known false evidence

is incompatible with rudimentary demands of justice." *Giglio v. United*

*States*, 405 U.S. 150, 153 (1972)(citations and internal quotations omitted).

This rule applies to both the solicitation of false testimony and the knowing

acquiescence in false testimony. *Napue v. Illinois*, 360 U.S. 264, 269

(1959). In order to prove this claim, a defendant must show that (1) the

evidence the prosecution presented was false; (2) the prosecution knew it

was false; and (3) the false evidence was material. *United States v.*

*Hawkins*, 969 F.2d 169, 175 (6th Cir.1992). Mere inconsistencies in

testimony, however, do not establish a prosecutor's knowing use of

perjured testimony. *Monea v. United States*, 914 F.3d 414, 421 (6th Cir.

2019).

The state court reasonably rejected this claim. While there were

inconsistencies in Eddins and Dean's various statements and testimony,

that fact alone does not establish that the prosecutor offered testimony that

it knew to be false. Nor can Wilson establish that it was the testimony

offered at trial by the prosecutor that contained indisputably false

statements. The inconsistencies at issue all involved details of the

witnesses' observations, such as who opened an outer door or exactly

where a person was standing when he made his observations. These types

of inconsistencies are commonly explored at trial and then used to

challenge a witness's credibility or the reliability of their memory. The

prosecutor did not offer any of the details as the truth while knowing them

to be false. To the contrary, and as noted by the state court, the

inconsistencies were fully explored by the parties at trial, and the witnesses

were allowed to offer explanations for any perceived inconsistencies. At

most, therefore, the record shows that the challenged testimony falls under

the "mere inconsistencies" distinction, the presentation of which does not

constitute misconduct. *See Monea*, 914 F.3d at 421; *see also Coe v. Bell*,

161 F.3d 320, 343 (6th Cir. 1998). Wilson's third claim is therefore without

merit.

D. Ineffective Assistance of Counsel

    Wilson's final claim asserts that his trial counsel was ineffective for

failing to obtain the transcript from Simms' trial prior to the preliminary

examination in his own case. He asserts that the transcripts could have

been used to cross-examine Eddins at the preliminary examination, and

because Eddins was too ill to personally testify at trial, the failure to secure

the prior trial testimony proved prejudicial.

The Michigan Court of Appeals rejected the claim on the merits:

> In this case, the record does not support defendant
> Wilson's assertion that defense counsel was unprepared to try
> the case because he failed to obtain a transcript of Eddins's
> testimony from Simms's trial. Because Eddins was unavailable
> for trial, his preliminary examination testimony was read into the
> record. Contrary to what defendant Wilson argues, the record
> clearly shows that defense counsel possessed Eddins's prior
> testimony from Simms's trial and used it at trial to impeach
> Eddins's preliminary examination testimony. Indeed, defendant
> Wilson's Trial Exhibit 1 was "Excerpts of Eddins' trial transcripts,"
> from which defense counsel read numerous questions and
> answers, illustrating alleged inconsistencies in Eddins's
> testimony. In closing argument, defense counsel used the prior
> testimony to highlight inconsistencies in Eddins's and Deen's
> testimony. On a third occasion, when arguing defendant Wilson's
> motion for a new trial, defense counsel gave the trial court
> examples of when he "use[d] specific portions from [Simms's]
> jury trial to show the inconsistencies in [Eddins's] testimony." To
> the extent that defendant Wilson is suggesting that defense
> counsel should have obtained the prior testimony earlier, he has
> not explained what defense counsel could have done differently
> or how the outcome of the proceeding would have been different
> had he done so. Because the record shows that defense counsel
> obtained Eddins's testimony from Simms's trial, and proficiently
> used that testimony at trial to impeach Eddins's preliminary
> examination testimony, defendant Wilson has not demonstrated
> that he was prejudiced by any alleged unpreparedness.

*Wilson,* 2018 WL 4577192, at *7-8.

In *Strickland v. Washington*, 466 U.S. 668(1984), the Supreme Court

set out the familiar two-prong test for determining whether a counsel's

- 17 -

assistance is so deficient that it requires a conviction to be set aside. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Id.* at 687.

"Whether counsel's performance was 'deficient' under the first prong is determined by reference to 'an objective standard of reasonableness'—specifically, 'reasonableness under prevailing professional norms.'" *Hendrix v. Palmer*, 893 F.3d 906, 921 (6th Cir. 2018) (quoting *Strickland*, 466 U.S. at 688). The second prong of the test requires that the defendant affirmatively prove prejudice, meaning that his counsel's errors "must have 'actually had an adverse effect on [his] defense.'" *Id.* (quoting *Strickland*, 466 U.S. at 693). The standard is especially difficult to meet in a federal habeas case, where the review that applies to *Strickland* claims is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). "The question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether

that determination was unreasonable—a substantially higher threshold.'"

*Id*. (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). For a state

court's adjudication of a Strickland claim to be "unreasonable" under 28

U.S.C. §2254(d)(1), it "must have been 'so lacking in justification' that it

amounts to 'an error well understood and comprehended in existing law

beyond any possibility for fairminded disagreement.'" *Hendrix*, 893 F.3d at

922 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

The state court did not unreasonably apply this standard to Wilson's

claim. Whether analyzed from the perspective of deficient performance or

prejudice, Wilson fails to demonstrate entitlement to relief. First, with

respect to performance, the record shows that while counsel did not obtain

the transcript in time for Wilson's preliminary examination, he did obtain it

and use it at trial. Instead of confronting Eddins at the exam with his prior

trial testimony, defense counsel was able to present the prior inconsistent

testimony to the jury at trial. That is, excerpts from the prior trial testimony

of Eddins which were contradictory to his preliminary examination

testimony were read into the record and admitted as a trial exhibit. (ECF

No. 8-9, at 190-191.) Defense counsel then used the prior trial testimony

during closing argument to point out the inconsistencies in Eddins'

testimony. (ECF No. 8-11, at 4-13.) This was a reasonably effective way of

challenging Eddins' credibility, and it was arguably preferable to giving Eddins an opportunity to explain inconsistencies if he had been personally confronted with his former testimony at the preliminary exam.

Based on this record it was reasonable for the state court to conclude that counsel performed adequately in the manner he used Eddins' prior testimony, and because the jury was otherwise made aware of the inconsistencies, Wilson was not prejudiced by the failure to use the prior testimony at the preliminary examination.

Because all of Wilson's claims lack merit, the petition for writ of habeas corpus is denied.

## IV. Certificate of Appealability

Before Petitioner may appeal this decision, the Court must determine whether to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy § 2253(c)(2), Petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484

(2000) (citation and internal quotation marks omitted). The Court finds that reasonable jurists would not debate the resolution of any of Petitioner's claims. The Court will therefore deny a certificate of appealability.

Finally, Petitioner is not entitled to permission to appeal in forma pauperis because any appeal of this decision would be frivolous. 28 U.S.C. § 1915(a)(3).

## V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus with respect to Petitioner's first and second claims, 2) **DENIES WITHOUT PREJUDICE** Petitioner's conditions of confinement claims, 3) **DENIES** a certificate of appealability, and 4) **DENIES** permission to appeal in forma pauperis.

**SO ORDERED.**

Dated:  August 30, 2021

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on August 30, 2021, by electronic and/or ordinary mail and also on Travone Latrell Wilson #301229, Macomb Correctional Facility, 34625 26 Mile Road, New Haven, MI 48048.

s/Brianna Sauve
Deputy Clerk

- 21 -